1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Frank Dale McCray,                          No. CV-17-01658-PHX-DJH

10                          Petitioner,           **ORDER**

11   v.                                          <u>DEATH-PENALTY CASE</u>

12   David Shinn, et al.,

13                          Respondents.

14

15        Pending before the Court is Petitioner Frank Dale McCray's motion to stay his

16   federal proceedings and hold them in abeyance so he may return to state court to exhaust

17   two competency-related claims in his Petition for Writ of Habeas Corpus brought pursuant

18   to 28 U.S.C. § 2254. McCray also moves the Court to authorize his attorneys to represent

19   him in state court postconviction proceedings. (Doc. 59.) The motion is fully briefed.

20   (Docs. 65, 69.) The Court denies both requests for the reasons stated below.

21   **I.    Factual and Procedural Background**

22        In 1991, in proceedings unrelated to the offense at issue here, McCray underwent

23   competency proceedings following his arrest on charges of aggravated assault, robbery,

24   and burglary of a residence. (*See* IOR 366 at 247, 257.)[1] Though McCray was subsequently

25   _____

26        [1] The Court uses the same citation formats used by Petitioner in his Motion and in
     his Petition for Writ of Habeas Corpus. (*See* Doc. 14 at 1 n.3.) The Maricopa County
27   Superior Court prepared an Index of Record for the petition for review proceedings, which
     includes documents from both the trial and postconviction proceedings and is numbered
28   1–468. Indexed documents from the record on appeal and from the state postconviction
     proceedings are designated "IOR" followed by the docket number.

found competent by the two doctors who had evaluated him, they both diagnosed McCray with paranoid schizophrenia and felt McCray required psychiatric help including medication. (*Id.* at 257.)

In May 1987, McCray forced his way into the apartment of Chestene Cummins, physically assaulted her, raped her, and strangled her to death with a cord. *State v. McCray*, 218 Ariz. 252, 259 (2008). The crime remained unsolved for more than a decade. *Id.* at 255.

In June 1992 McCray underwent competency proceedings after being charged for a separate incident of kidnapping and sexual assault. (Doc. 41, Ex. 3 at 2; IOR 366 at 277.)[2] He was evaluated by a psychiatrist who diagnosed him with chronic paranoid schizophrenia, severe—with sociopathy, and determined he was incompetent with only a remote chance of restoration. (Doc. 41, Ex. 3 at 3.) After eventually being found competent by the court (*see* Doc. 14 at 28), McCray pleaded guilty to sexual assault and was sentenced to 18 years in the Arizona Department of Corrections. ("ADOC"). (Doc. 21 at 915–16.)

In 1997, McCray's blood was drawn and stored pursuant to a recently enacted Arizona law and, in 2000, his DNA profile was entered into the Arizona Department of Public Safety's database. *McCray*, 218 Ariz. at 255. In 2001, police matched a DNA profile obtained from semen in Cummins' body to McCray's profile and McCray was subsequently indicted for Cummins' murder. *Id*. at 255.

McCray's trial counsel filed a motion for a competency evaluation after a defense expert opined that McCray was "likely suffering from a serious mental disorder" and "his capacity to properly assist in his defense [was] very questionable." (IOR 80 at 3.) On November 6, 2003, the Maricopa County competency court found McCray criminally incompetent and ordered that he be sent to the Arizona State Hospital to receive treatment. (IOR 102 at 1–2.) Later, for security reasons, the court ordered that McCray instead

---

[2] McCray attached to his habeas petition and request for evidentiary development a number of items that are not included in the state-court record. Respondents address this extra-record evidence in responding to the motion to stay. The Court considers the extra-record evidence solely for purposes of resolving McCray's motion to stay.

undergo the Restoration to Competency ("RTC") program at the Maricopa County Jail through Correctional Health Services ("CHS"). (IOR 104; IOR 105.)

On March 2, 2004, an RTC psychologist, Bruce Kushner, opined that McCray had been restored to competency. (IOR 111.) Trial counsel stipulated that the court could determine McCray's competency based on Kushner's final report, which recommended that McCray "should be maintained on medication." (IOR 109; IOR 111 at 5; Tr. Mar. 11, 2004 at 3.) Upon review of Kushner's report, the competency court concluded that McCray "understands the proceedings and is able to assist counsel and defend its defense so long as he remains compliant with medication." (Tr. Mar. 11, 2004 at 3.) The competency court directed McCray to continue to take all prescribed medications" and the CHS to continue to provide the medications. (*Id.*) Consequently, the court ordered that "the current medication regimen is necessary to ensure Defendant's ongoing competency," that "the Defendant shall take any and all medication as prescribed," that "[CHS] shall provide any and all prescribed medications to the Defendant as directed," and "that any change in the medications recommended by the [CHS RTC] Program shall take place only after consultation with the Director of Psychiatry at [CHS] and the Director of Psychiatry at the [CHS RTC] Program." (IOR 113 at 2.)

In 2005, a jury convicted McCray of first-degree felony murder. In the penalty phase of the trial, the jury found two aggravating factors: McCray had been previously convicted of a felony involving violence, *see* A.R.S. § 13–703(F)(2) (1978 & Supp.1987), and the murder was especially cruel, *id.* § 13–703(F)(6). *McCray*, 218 Ariz. at 257. The jury determined McCray should receive a death sentence and the trial court entered a sentence of death by lethal injection. *Id*.

After the Arizona courts denied relief on both direct and collateral review, McCray filed a habeas petition in this Court presenting 55 claims for relief. (Doc. 14.) At issue in this motion to stay are two competency-related claims in the petition: Claim Eight, alleging that McCray's due process rights were violated when he was tried and sentenced to death while legally incompetent (*id*. at 239–247), and Claim Five(A), alleging that his trial

counsel rendered constitutionally deficient performance by failing to object to the unconstitutional procedures used or the unreasonable competency determinations made during his competency proceedings (*id.* at 199–206). McCray alleges that for the fifteen months leading up to his trial, and up through the day he was sentenced to death, he was not provided with any anti-psychotic medication, and both his counsel and the trial court had reason to question McCray's understanding of the proceedings and his ability to assist in his defense, but no new competency evaluation was requested or ordered. McCray asserts that, because of his state postconviction counsel's ineffectiveness, no court has ever heard evidence that McCray was tried and sentenced to death while incompetent and that his trial counsel were ineffective for failing to ensure his competency. McCray now requests a stay in order to allow him to seek relief in state court on Claims Five(A) and Eight.

**II.    Applicable Law**

   **A.    *Rhines* Stay and Abeyance**

A federal court may not "adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims." *Rhines v. Weber*, 544 U.S. 269, 273 (2005) (citing *Rose v. Lundy*, 455 U.S. 509, 518–519 (1982)). The Supreme Court has held that "a federal district court has discretion to stay [a] mixed petition to allow the petitioner to present his unexhausted claims to the state court in the first instance, and then to return to federal court for review of his perfected petition." *Rhines*, 544 at 271–72. This discretion is to be exercised under "limited circumstances," *id*. at 277, because "routinely granting stays would undermine the AEDPA's[3] goals of encouraging finality and streamlining federal habeas proceedings." *Blake v. Baker*, 745 F.3d 977, 981–82 (9th Cir. 2014).

The stay-and-abeyance procedure is appropriate only where the habeas petitioner has shown: (1) "good cause" for the failure to exhaust, (2) the unexhausted claim is

---

[3] The Antiterrorism and Effective Death Penalty Act of 1996.

"potentially meritorious," and (3) the petitioner did not "engage[] in intentionally dilatory litigation tactics." *Rhines*, 544 U.S. at 277–78. "[G]ood cause turns on whether the petitioner can set forth a reasonable excuse, supported by sufficient evidence, to justify" the failure to exhaust the claim in state court. *Blake*, 745 F.3d at 982. However, "even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." *Rhines*, 544 U.S. at 277–78.

### B.    Exhaustion

Because the *Rhines* procedure for staying a petition applies only to "mixed petitions," *see King v. Ryan*, 564 F.3d 1133, 1140 (9th Cir. 2009) (explaining that the *Rhines* exception to the total exhaustion rule carved out an exception allowing mixed petitions to remain pending in federal court under limited circumstances), the Court must first analyze the procedural status of Claims Five(A) and Eight in McCray's petition to determine if they are unexhausted.

A petitioner's claims are exhausted if (1) the petitioner has fairly presented the federal claim to the highest state court with jurisdiction to consider it or (2) no state remedy remains available for the claim. *Johnson v. Zenon*, 829 (9th Cir. 1996). This latter form of exhaustion, where a petitioner has failed to meet the State's procedural requirement for presenting a claim in state court, is described as "technical exhaustion" through procedural default. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006) ("[I]f state-court remedies are no longer available because the prisoner failed to comply with the deadline for seeking state-court review or taking an appeal, those remedies are technically exhausted . . . ."); *Coleman v. Thompson*, 501 U.S. 722, 732 (1991) ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."); *Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007) (observing that if the state court would find the claims procedurally barred, petitioner has technically exhausted the claims through procedural default).

A *Rhines* stay would be inappropriate in a federal habeas case if the claims for which

1    a petitioner seeks a stay are technically exhausted through procedural default. *See e.g.*,

2    *Armstrong v. Ryan*, 2017 WL 1152820 (D. Ariz. March 28, 2017); *White v. Ryan*, 2010

3    WL 1416054, *12 (D. Ariz. March 16, 2010) ("Because the Petition in this case contains

4    claims that are either actually or technically exhausted, it is not a mixed Petition and *Rhines*

5    does not apply.").

6        In Arizona, Rule 32 of the Arizona Rules of Criminal Procedure[4] ("Rule 32")

7    governs PCR proceedings and provides that a petitioner is procedurally barred from relief

8    on any claim alleging that the defendant was convicted or sentenced in violation of the

9    United States constitution that could have been raised on appeal or in a prior PCR petition.

10   Ariz. R. Crim. P. 32.1(a); 32.2(a)(3). Under Arizona law, a petitioner generally may not

11   return to state court to exhaust claims unless the claims fall within the category of claims

12   for which a successive PCR petition is permitted. *See* Ariz. R. Crim. P. 32.1 (b)–(h), 32.2(a)

13   & (b)).

14       Additionally, Arizona's time bar under Rule 32.4 is an additional bar that may make

15   a return to state court fruitless. *See Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002)

16   (holding that if an Arizona habeas petitioner "has any exhausted claims" they are

17   "procedurally defaulted ... because he is now time-barred under Arizona law from going

18   back to state court"); *Moreno v. Gonzalez*, 116 F.3d 409, 410 (9th Cir. 1997) (observing

19   timeliness under former Rule 32.4(a) as grounds for dismissal of a PCR petition, distinct

20   from preclusion under Rule 32.2(a)). A defendant must file the notice for a claim under

21

22       [4] After the petition and the present motion in this case were fully briefed, the Arizona
     Supreme Court abrogated Rule 32 of the Arizona Rules of Criminal Procedure and adopted
23   a new Rule 32 and Rule 33, amending substantively and reorganizing the rules concerning
     postconviction relief, effective January 1, 2020. The new rules apply to all actions filed on
24   or after January 1, 2020 and in all other actions pending on January 1, 2020, except to the
     extent the court determines that applying the rule or amendment would be infeasible or
25   work an injustice, in which event the former rule or procedure applies. *See* Ariz. R. Crim.
     P. 32, cmt. Although the Court has considered and cites throughout this Order to the current
26   version of Rule 32 in making its determination that McCray has no presently available state
     remedy, *see Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998) (approving of district
27   court's evaluation of then current Rule 32.2 to determine if Ortiz had a presently available
     state remedy), whether the Court evaluates McCray's claims under the former rules in
28   effect at the time the motion was filed or the current rules makes no difference to the
     Court's ultimate determination.

Rule 32.1(a) within 90 days after the oral pronouncement of sentence or within 30 days after the issuance of the mandate in the direct appeal, whichever is later." Ariz. R. Crim. P. 32.4(b)(3)(A). Claims under Rule 32.1(b) through (h) must be brought "within a reasonable time after discovering the basis of the claim." Ariz. R. Crim. P. 32.4(b)(3)(C).

## III.   Discussion

As an initial matter, the Court rejects Respondents' argument that Claim Eight was adjudicated on the merits by the trial court by way of competency proceedings pursuant to Rule 11 of the Arizona Rules of Criminal Procedure and the subsequent finding by the trial court that McCray was restored to competency. (Doc. 65 at 7.) McCray argues in Claim Eight that he was not, in fact, restored to competency and that the perfunctory review by the parties and the court following his commitment for purposes of restoration resulted in his conviction and sentence being "rendered in violation of his constitutional rights to due process, to a fair and reliable determination of penalty, to present a defense, and to the effective assistance of counsel because he was suffering from psychiatric and neurological impairments as a result of his FASD and schizoaffective disorder at the time of his trial that rendered him legally incompetent." (Doc. 14 at 241.) The legal theory and operative facts of this claim were never presented to or adjudicated on the merits by any state court.

### A.   No Available State Court Remedy

Because Claims Five and Eight have never been presented to any state court, the Court must determine if McCray has an available remedy in state court for these claims or if he would be procedurally barred from raising them in a successive PCR petition. Respondents argue that the claims would be precluded as a successive PCR petition under Rule 32.2(a)(3), and as time barred under former Rule 32.4(a). McCray asserts that his claims are not procedurally defaulted because they meet the procedural requirements of exceptions to Arizona's procedural bars for successive petitions under Rules 32.2(b) and that Claim Eight was not personally waived by defendant, as required under Rule 32.2(a)(3). For the reasons stated below, the Court disagrees; there is no state court remedy available to McCray because he waived these claims.

1    If McCray were to return to state court and file a PCR notice alleging his conviction

2  and sentence were rendered in violation of the United States Constitution, the state courts

3  would find it untimely. *See* Ariz. R. Crim. P. 32.1(a); 32.4(b)(3)(a); *Beaty*, 303 F.3d at 987;

4  *Moreno*, 116 P.3d at 410. Newly adopted Rule 32.4(b)(3)(D), however, provides that

5  untimely notices requesting postconviction relief filed for claims brought pursuant to Rule

6  32.1(a) must be excused if the defendant adequately explains why the failure to timely file

7  a notice was not the defendant's fault. Because this provision was not in effect when the

8  parties filed their motion, the Court makes no finding that either claim would be

9  procedurally barred as untimely under this new rule and none is necessary; as explained

10  below, both claims are waived because McCray failed to raise them on direct review or in

11  his first PCR petition, and no exception to preclusion applies to these claims.

12    Claim Eight, to the extent it alleges trial court error based on the record, is waived

13  and precluded under Rule 32.2(a)(3) because McCray failed to present it to the Arizona

14  Supreme Court on direct appeal. *See* Ariz. R. Crim. P. 32.2(a)(3); *see also State v. Moody*,

15  94 P.3d 1119, 1137 (Ariz. 2004).

16    McCray also failed to raise either Claim Five(A) or Eight in his first PCR petition.

17  Ineffective assistance of counsel claims arise under Rule 32.1(a). *See State v. Robbins*, 166

18  Ariz. 531, 533 (App. 1991) (acknowledging claims of ineffectiveness of counsel fall under

19  Rule 32.1(a)); *see also* Ariz. R. Crim. P. 32.1(a) cmt. ("[Rule 32.1(a)] encompasses most

20  traditional post-conviction claims, such as . . . incompetent or ineffective counsel . . ..")

21  Because Claim Eight alleges a constitutional violation, to the extent it relies on extra-record

22  evidence, it also arises under Rule 32.1(a). *See Lambright v. Stewart*, 241 F.3d 1201, 1203–

23  05 (9th Cir. 2001) (observing that in Arizona claims requiring factual development must

24  ordinarily be raised in PCR proceedings rather than on direct appeal). Both claims were

25  waived because McCray failed to present them in his first PCR proceeding and would now

26  be precluded under Rule 32.2(a)(3) if presented in a successive PCR petition.

27    Thus, in the absence of an exception to Arizona's preclusionary rules that would

28  make a state court remedy available, *See* Ariz. R. Crim. P. 32.2(b), Claims Five(A) and

Eight are technically exhausted through procedural default. *See* Ariz. R. Crim. P. 32.2(b).

### B. Exceptions to Arizona's Procedural Bars

At the outset, the Court rejects McCray's broad assertion that "[t]he ultimate determination of whether McCray has met the requirements of an exception to Rule 32's procedural bars, a question of state law, must be answered by the state court." (Doc. 69 at 2; *see also* Doc. 59 at 16 ("[C]ontrolling Circuit authority holds that a stay is appropriate as applied to the filing of a second state petition in Arizona because it is not clear that such a petition would be procedurally barred.").) While there may be instances in which it is not clear that the Arizona courts would find a claim barred, *see e.g., Cassett v. Stewart*, 406 F.3d 614 (2005), it is the role of the district court to determine if a petitioner presently has a remedy available in state court. *Ortiz*, 149 F.3d at 931. In making that decision, the court is required to "assess the likelihood that a state court will accord the habeas petitioner a hearing on the merits of his claim." *Phillips v. Woodford*, 267 F.3d 966, 974 (9th Cir. 2001) (citing *Harris v. Reed*, 489 U.S. 255, 268 (1989) (O'Connor, J., concurring)). The question is whether "there is some reasonable probability that (state) relief . . . will actually be available." *Matias v. Oshiro*, 683 F.2d 318, 320 (9th Cir. 1982) (citing *Powell v. Wyrick*, 657 F.2d 222, 224 (8th Cir. 1981)).

McCray asserts his claim that he was tried and sentenced while legally incompetent is cognizable under Rule 32.1(h), an exception to Arizona's preclusionary rules. *See* Ariz. R. Crim. P. 32.2(b). McCray supports this assertion with a citation to an unpublished appellate court decision, *State v. Sanchez*, No. 1-CA-CR-15-0431-PRPC, 2018 WL 359810, at *2 (Ariz. Ct. App. 2018), upholding the trial court's summary dismissal of a claim of incompetency raised under Rule 32.1(h). In *Sanchez*, the appellate court upheld the PCR court's ruling in *State v. Sanchez*, CR 2010-006121-001 DT; CR 2009-007906-004 DT, Maricopa County Superior Court Ruling (March 2, 2015).[5] The PCR court had specifically rejected Sanchez's argument that, because he was incompetent, a fact finder

---

[5] The Court takes Judicial Notice of the PCR court's ruling. *See* Fed. R. Evid. 201(c)(1).

could not have found him guilty beyond a reasonable doubt because the criminal trial of an incompetent defendant violates due process. *Id.* The PCR court explained Sanchez's reasoning was flawed, because "[t]o prevail on a claim pursuant to Ariz. R. Crim. P. 32.1(h) a defendant must demonstrate by clear and convincing evidence that no fact finder could find him guilty beyond a reasonable doubt *on the facts underlying the charges*," whereas "[c]competence is a legal determination to be made by the court." *Id.* at 4 (emphasis added). The PCR court continued, stating that, "[e]ven if Sanchez's claim of incompetency at the time of the plea properly fit within the legal framework of Rule 32.1(h), it would still not prevail." On review, the appellate court rejected Sanchez's argument that the court applied the wrong burden of proof in reviewing his claim of incompetency raised under Rule 32.1(h), explaining:

> This rule specifically states that a petitioner seeking relief on the basis that "no reasonable fact-finder would have found defendant guilty" has the burden of establishing the facts underlying the claim by "clear and convincing evidence." Ariz. R. Crim. P. 32.1(h). Thus, the trial court did not err by referring to this burden of proof in addressing Sanchez's claim.

*Sanchez*, 2018 WL 359810 at \*2.

McCray asserts that Respondents' argument—that the unpublished *Sanchez* case does not "address the issue of whether Rule 32.1(h) is a proper avenue for relief for a petitioner's claim of incompetence at the time of trial" (*see* Doc. 65 at 11)—misses the point, that *Sanchez* demonstrates that Arizona courts do analyze competency claims under Rule 32.1(h) and thus it is not clear that the state courts would hold an incompetency claim raised in a successive petition under Rule 32.1(h) barred. The Court disagrees. Read in context, *Sanchez* strongly suggests that constitutional based due process competency claims do not fall within the purview of Rule 32.1(h) because they do not challenge the facts "underlying the charges." Moreover, Sanchez's competency claim was presented in a timely, and presumably first, proceeding for postconviction relief. The state courts had no reason to perform an analysis of whether Sanchez's claim would be precluded under Rule 32.2(a) or whether it met an exception under Rule 32.2(b). McCray cites no authority,

- 10 -

1    and this Court is not aware of any, in which an Arizona court has recognized that a

2    competency related due process claim raised under Rule 32.1(h) is not subject to preclusion

3    under Rule 32.2(b).

4    Next, McCray asserts that Claim Eight is also cognizable under Rule 32.1(e). That

5    exception dictates that Rule 32.2(a)(3) does not apply if "newly discovered material facts

6    probably exist and those facts probably would have changed the judgment or sentence."

7    Ariz. R. Crim. P. 32.1(e); 32.2(b). McCray bases his argument on the newly alleged fact

8    that "ADOC violated the competency court's order to maintain McCray on antipsychotic

9    medication in order to ensure his competence, and instead, ceased all mental-health

10   medication" and he was therefore incompetent at the time of his trial and sentencing. (Doc.

11   59 at 17.) McCray states that, had the trial court been alerted that McCray was no longer

12   being medicated, in violation of the competency court's order, he would have been

13   reevaluated and deemed incompetent to stand trial and thus would not have been convicted

14   or sentenced to death, satisfying the requirements of Rule 32.1(e).

15   Under Rule 32.1(e), however, McCray is required to demonstrate that he "exercised

16   due diligence in discovering" the new evidence. McCray's medical and mental health

17   records while he was incarcerated at ADOC were available at the time of his trial, and

18   therefore McCray did not diligently discover these records and develop the factual basis

19   for his claim. *See* Ariz. R. Crim. P. 32.1(e); *see also State v. Amaral*, 239 Ariz. 217, 219

20   (2016); *State v. Bilke*, 162 Ariz. 51, 52–53. McCray offers no persuasive reason why his

21   attorneys could not have reviewed these records prior to his trial. Conversely, McCray

22   asserts that both trial counsel and postconviction counsel had reason to suspect McCray

23   was incompetent at the time of trial and should have obtained all of the records and

24   information demonstrating McCray had lapsed into incompetency, including:

25       [T]he 1981 and 1992 Rule 11 reports from McCray's prior cases, which
         include multiple diagnoses of paranoid schizophrenia, and a psychiatrist's
26       finding that McCray was incompetent to stand trial; CHS records reflecting
         the medication he was taking at the time Kushner determined McCray had
27       been restored to competency and documenting his self-harming behavior; the
28

- 11 -

competency court's order that he must remain on his medication regimen to maintain competency; ADOC Medical and Offender Records showing that McCray was removed from his anti-psychotic medication in violation of that order; and the trial transcripts showing his bizarre behavior at trial.

(Doc. 59 at 5–6.)

Citing *State v. Avington*, 2017 WL 83340, \*2 (Ariz. Ct. App. Jan 10, 2017), for support, McCray argues that Arizona courts have recognized that where ineffective assistance resulted in prior counsel failing to exercise due diligence to discover material facts related to a petitioner's mental illness, that claim may be cognizable under Rule 32.1(e)(2). *Avington*, however, does not support McCray's argument. In *Avington*, an unpublished memorandum decision by an intermediary appellate court, the defendant asserted that he did not learn he suffered from post-traumatic stress disorder until after he filed his first PCR petition. The court held that under Rule 32.1(e), "Avington was required to show the evidence existed at the time of trial but could not have been discovered through the exercise of reasonable diligence." *Id.* at \*1. Avington blamed the failure to discover this evidence on the ineffectiveness of trial counsel, who failed to exercise reasonable diligence in making that discovery. *Id.* at \*2. The court found such a claim could not be raised in a successive petition, because it was essentially an ineffective assistance of counsel claim made pursuant to Rule 32.1(a) and was thus untimely under Rule 32.4(a). *Id.* The court then assumed, *without deciding*, that Avington's argument—"that he recently discovered evidence his counsel should have discovered before trial"—was cognizable under Rule 32.1(e), and held that absent a showing of meritorious reasons why he could not have raised it in his earlier petition for postconviction relief, it was also subject to preclusion under Rule 32.2(b). Thus, *Avington* does not, as McCray asserts, support a finding that ineffective assistance of counsel excuses the due diligence requirement of Rule 32.1(e). "Evidence is not newly discovered unless it was unknown to the trial court, the defendant, or counsel at the time of trial and neither the defendant nor counsel could have known about its existence by the exercise of due diligence." *State v. Saenz*, 197 Ariz. 487,

1　490 (App. 2000). McCray has not alleged facts from which the state court could conclude

2　he had been diligent in discovering that he was no longer being medicated in violation of

3　the competency court's order and thus cannot establish a claim of newly discovered

4　evidence under Rule 32.1(e).

5　　　**C.　　Personal Waiver**

6　　　Next, relying on the United States Supreme Court's recognition in *Stewart v. Smith*,

7　that, under Arizona's Rule 32.2(a)(3), the waiver of a claim of "sufficient constitutional

8　magnitude," must be knowing, voluntary and intelligent, and "not merely omitted from

9　previous petitions" *Stewart v. Smith*, 536 U.S. 856, 858 (2002) (per curiam), McCray

10　argues that he could not waive his competency claim as contemplated by Rule 32.2(a)(3).

11　McCray asserts that the right to be competent when tried, convicted, and sentenced is of

12　"sufficient constitutional magnitude" that any waiver thereof must be knowing, voluntary,

13　and intelligent for purposes of applying Rule 32.2(a)(3). (Doc. 30 at 133.)

14　　　McCray first asserts that although the Arizona Supreme Court has not identified the

15　right to competency as a specific right requiring a knowing waiver before its omission in

16　prior proceedings may give rise to a procedural bar pursuant to Rule 32.2(a)(3), the court

17　has cited approvingly to *Schneckloth v. Bustamonte*, 412 U.S. 218, 237 (1973), in which

18　the United States Supreme Court observed that the requirement of a knowing and

19　intelligent waiver applies to those rights guaranteed "to preserve a fair trial." *Stewart v.*

20　*Smith*, 202 Ariz. 446, 449 (2002). McCray argues that the right to be competent during trial

21　is such a right. (Doc. 59 at 18) (citing *Drope v. Missouri*, 420 U.S. 162, 172 (1975))

22　("[F]ailure to observe procedures adequate to protect a defendant's right not to be tried or

23　convicted while incompetent to stand trial deprives him of his due process right to a fair

24　trial.").

25　　　This argument fails for two reasons. First, McCray presumes that competency is a

26　right that can only be personally waived while at the same time inexplicably

27　acknowledging that the Supreme Court has stated that "it is contradictory to argue that a

28　defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have

the court determine his capacity to stand trial." *Pate v Robinson*, 383 U.S. 375, 384 (1966); *see also State v. Davis*, 106 Ariz. 598, 480 P.2d 354 (1971) (citing *Pate*, 383 U.S. at 384); *State v. Ferguson*, 26 Ariz. App. 285, 287 (1976) ("The right to a determination of competency to stand trial cannot be waived for the obvious reason that until he is found competent, a defendant cannot make a knowing waiver.").

It does not necessarily follow, however, that because a defendant cannot personally waive their right to competency during trial that defendant's counsel cannot waive a competency claim on appeal or in postconviction proceedings. McCray mistakenly presumes that all rights necessary to preserve a fair trial are "personal rights" that cannot be waived by defendant's counsel. But Arizona law does not support this assertion. *See State v. Swoopes*, 216 Ariz. 390, 399 (App. 2007) ("The mere assertion by a defendant that his or her right to a fair trial has been violated is not a claim of sufficient constitutional magnitude for purposes of Rule 32.2. … An alleged violation of the general due process right of every defendant to a fair trial, without more, does not save that belated claim from preclusion.")

The personal-waiver rule applies only to a small category of "inherently personal right[s] of fundamental importance," such as the right to counsel and the right to a jury trial. *State v. Espinoza*, 200 Ariz. 503, 505 (App. 2001). McCray points to no legal authority holding that competency is the type of paramount right that requires a personal waiver. In fact, Arizona courts do find claims relating to competency to stand trial subject to preclusion under Rule 32.2(a) when counsel has failed to raise the issue on appeal. *See e.g.*, *State v. Weeks*, No. 2 CA-CR 2013-0032-PR, 2013 WL 4511315, at *1 (Ariz. Ct. App. Aug. 22, 2013) (". . . Week's claims of trial error, relating to his competency to stand trial and the court's duty to order a competency evaluation sua sponte, are precluded because he did not raise them on appeal. *See* Ariz. R. Crim. P. 32.2(a)(3) . . . .")[6]; *State v. Pryor*,

---

[6] In federal court, the Ninth Circuit subsequently affirmed the District Court's conclusion in *Weeks* that a competency claim may be procedurally defaulted, citing its holding in *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306–07 (9th Cir. 1996), that an Arizona court's application of its waiver rule, Rule 32.2(a), to an incompetency claim was

1    No. 2 CA-CR 2012-0247-PR, 2012 WL 4859158, at \*1 (Ariz. Ct. App. Oct. 12, 2012)

2    (noting the trial court found Pryor's competency claim precluded pursuant to Rule 32.2(a)

3    despite Pryor's arguments that his claims of ineffective assistance of counsel and

4    competency required personal waivers and therefore were not subject to preclusion); *State*

5    *v. Tucci*, No. 2 CA-CR 2010-0294-PR, 2011 WL 315429, at \*1 (Ariz. Ct. App. Jan. 25,

6    2011) (finding Tucci failed to demonstrate trial court error in finding Tucci's competency

7    claim brought in a successive petition precluded under Rule 32.2(a) because he did not

8    explain why his mental-health claims could not be raised on appeal and therefore should

9    not be precluded under Rule 32.2(a)(1)).

10    Finally, though McCray did not specifically argue that his IAC claim also requires

11    personal waiver, the Court addresses this issue on its own in considering whether there is

12    an available state remedy for Claim Five(A). Ineffective-assistance claims do not generally

13    require personal waivers. Rather, they are precluded in successive postconviction

14    proceedings by a defendant's failure to raise them in his first. *See, e.g., State v. Bennett*,

15    213 Ariz. 562, 566 (2006). A court need only examine the underlying nature of the right

16    allegedly affected by counsel's ineffective performance if a petitioner asserts ineffective

17    assistance of counsel for the first time in a successive PCR petition. *Stewart v. Smith*, 202

18    Ariz. at 450. If there has been no personal waiver of a right of sufficient constitutional

19    magnitude, then the IAC claim is not precluded. *Id.* If it is not of such magnitude, the claim

20    is precluded. *Id*. Because a successive petition would not be McCray's first petition raising

21    claims of ineffective assistance of counsel, the Court need not address the nature of the

22    right affected by counsel's ineffective performance. *See id.* But even if it did address the

23    nature of the right, McCray's right to competency cannot be personally waived, as

24    explained above, but can be waived by counsel's failure to raise the claim.

25    Thus, McCray's failure to "personally waive" his right to competency does not

26    excuse either claim from preclusion.

27    an independent and adequate state ground that precluded federal habeas review absent a
28    showing of cause and prejudice. *Weeks v. Ryan*, 2017 WL 4662251 (D. Ariz. Oct 17, 2017), aff'd 741 Fed.Appx. 500 (9th Cir. 2018) (mem.).

**D.    McCray's Alleged Incompetence during PCR Proceedings does not Establish Cause to Excuse Procedurally Barred Claims**

McCray contends, relying on *Fitzgerald v. Myers*, 43 Ariz. 84 (2017), that a defendant's incompetence during state PCR proceedings may constitute cause to excuse an otherwise procedurally barred claim. (Doc. 57 at 19.) *Fitzgerald*, however, does not support this contention. In *Fitzgerald*, the Arizona Supreme Court held that there is no right to competency in PCR proceedings under Arizona Statute or Rule. *Id.* The Arizona Supreme Court did not address the question of whether a petitioner has a due process right to competency in PCR proceedings because the issue was not properly raised. The court also did not address whether a petitioner's incompetency may provide cause to excuse the failure by postconviction counsel to raise a competency claim in petitioner's initial PCR proceedings. The court did recognize that sometimes "a capital defendant's input and participation regarding a particular Rule 32 claim are needed and perhaps imperative," *id.* at 92, and that therefore a trial court has discretion to order a competency evaluation, "particularly in the initial capital case PCR proceeding," depending on all the circumstances, including the "importance of or need for the petitioner's direct input on those claims," *id.* at 92–93. The court contemplated that when a petitioner raises the issue of incompetency during a first PCR proceeding it might be appropriate for the PCR court to order a competency determination because it would serve as a "marker" for a successive PCR petition raising the issue of petitioner's incompetency in the first PCR to excuse the failure to raise a claim during the initial PCR proceedings due to the petitioner's incompetency and inability to competently consult with counsel, not, as McCray alleges occurred in this case, ineffective counsel's failure to raise the issue.

## IV.    Conclusion

McCray is not entitled to a stay. Because he has no available state remedy to raise his constitutional claims, they are technically exhausted through procedural default. *See Smith v. Baldwin*, 510 F.3d at 1139; *Phillips*, 267 F.3d at 974; *Johnson v. Zenon*, 88 F.3d at 829. Because Petitioner does not present a so-called "mixed petition," a stay under

1    *Rhines* is inappropriate. *See e.g.*, *White v. Ryan*, 2010 WL 1416054, \*12. Having

2    determined that Petitioner is not entitled to a *Rhines* stay, the Court finds it is not

3    appropriate to authorize the Federal Public Defender's Office to represent him in state

4    court. *See Harbison v. Bell*, 556 U.S. 180, 190 n.7 (2009) ("[A] district court may determine

5    on a case-by-case basis that it is appropriate for federal counsel to exhaust a claim in the

6    course of her federal habeas representation.")

7        Accordingly,

8        **IT IS ORDERED** McCray's Motion for Temporary Stay and Abeyance and for

9    Authorization to Appear in Ancillary State-Court Litigation (Doc. 59) is **denied**.

10        Dated this 26th day of February, 2020.

11

12

13      Honorable Diane J. Humetewa
14       United States District Judge